UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MERCEDES WHITFIELD,

                Plaintiff,                        Case Number 18-10973

v.                                        Honorable David M. Lawson

TRINITY RESTAURANT GROUP, LLC,

                Defendant.

_____/

**ORDER GRANTING FINAL APPROVAL OF
FAIR LABOR STANDARDS ACT SETTLEMENT, GRANTING
REQUEST FOR ATTORNEY'S FEES, AND DISMISSING CASE**

The Court conducted a fairness hearing on September 23, 2019 to determine whether a settlement agreement should be given final approval on behalf of the certified collective action in this case. Court approval is required for the settlement of claims for back wages or liquidated damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et. seq*. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982). "Other than a section 216(c) payment supervised by the Department of Labor, there is only one context in which compromises of FLSA back wage or liquidated damage claims may be allowed: a stipulated judgment entered by a court which has determined that a settlement proposed by an employer and employees, in a suit brought by employees under the FLSA, is a fair and reasonable res[o]lution of a bona fide dispute over FLSA provisions." *Ibid*.; *see also D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 113 n.8 (1946). Therefore, "[w]hen employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Id*. at 1353. If the settlement is a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id*. at 1354.

On December 18, 2018 the Court granted the plaintiff's motion for conditional certification of collective action under the FLSA and directed that written notice to the servers be given by March 22, 2019 via first-class mail augmented by other media. Plaintiff's counsel retained Simpluris, Inc. as the agent of the named plaintiff to give notice in the manner approved by the Court, and ultimately to administer the settlement, process claims, and make distributions. The Court approved the retention of Simpluris, Inc. as the settlement administrator.

I.

Plaintiff Mercedes Whitfield, on behalf of herself and others similarly situated, brought this collective action against defendant Trinity Restaurant Group, an International House of Pancakes (IHOP) restaurant franchisee that operates at least 14 IHOPs in Michigan. The thrust of the complaint is that Trinity violated the FLSA by failing to pay its servers the applicable minimum wage due to excessive non-tipped work and improper tip-pooling arrangements. The plaintiff alleged that Trinity required her and other servers to spend more than 20% of their time performing non-tip-producing side-work while Trinity still paid them the tipped minimum wage. The plaintiff also alleged that Trinity required servers to share their tips with other restaurant employees working as food runners. The plaintiff included a claim for violation of Michigan's minimum wage law.

The plaintiff initially moved to certify both a collective action under the FLSA and a class action under Federal Rule of Civil Procedure 23 for the Michigan law claim. The Court declined to exercise supplemental jurisdiction over the state law claim and dismissed it without prejudice. The plaintiff subsequently filed a case asserting that claim in the Wayne County, Michigan Circuit Court.

The Court conditionally certified the following collective action: "All current and former servers who worked for Trinity Restaurant Group, LLC at its IHOP restaurants in Detroit, Mount Pleasant, and  Saginaw at any time during the last three years." ECF No. 37, PageID.617.  The Court limited the collective to three of the defendant's fourteen restaurants because no employees from the other eleven restaurants had opted in to the action.

II.

Under the proposed settlement, the defendant agreed to pay all servers opting in from all l4 of its Michigan restaurants 17% of the hourly differential between the full Michigan hourly minimum wage and the hourly wage actually paid by Trinity for each hour worked by each server between March 26, 2016 and March 26, 2019.  This amounts to about $1.00 per hour worked over the three-year period.  Fifty percent of the cash payments will represent payment for wage claims, subject to appropriate tax withholding and employment taxes, while the remaining fifty percent of the payments will represent interest, which will be treated as non-wage payments to be reported as "other income" on IRS Forms 1099.  The parties will issue a settlement notice to all servers who worked for Trinity during the three-year period, and the settlement opt-in period will last 45 days.  The opt-in servers will be bound to a limited release of all wage-and-hour claims whether arising from statute or common law, in favor of Trinity.  Settlement payment checks that remain uncashed for 180 calendar days after they are mailed shall become void, and the funds associated with such voided checks shall be distributed to a charity on a *cy pres* basis.  The parties also agreed that the defendant would pay up to $315,000 for the plaintiff's attorney's fees.  Finally, the parties agreed to dismiss the FLSA claim with prejudice and with all rights of appeal waived and to dismiss the Wayne County action without prejudice or costs.

- 3 -

Under the schedule set by the Court, the period for filing claims and objections ran from March 22, 2019 to May 10, 2019.  The settlement administrator sent notices to all 1,705 potential plaintiffs by first-class mail and email for those who supplied an email address. About 72 FLSA opt-in servers joined the action.

### III.

At the fairness hearing, no one raised any objections to the settlement or appeared in opposition. After hearing a presentation by counsel, the Court made findings on the record, addressing the factors set forth in *UAW v. GMC*, 497 F.3d 615, 631 (6th Cir. 2007), which are "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Ibid*.  Although that case evaluated a proposed settlement of a class action under Federal Rule of Civil Procedure 23, the factors are also relevant to the fairness assessments of FLSA settlements.  *See Does 1–2 v. Déjà Vu Services, Inc.*, 925 F. 3d 886, 895-99 (6th Cir. 2019).  The plaintiff has established that the proposed settlement is adequate, reasonable, and fair.

*First*, the risk of fraud or collusion is low. The parties genuinely disagree about whether the defendant violated the FLSA.  The defendant contends that the plaintiff's arguments lack merit because they cannot prove any of their claims and aver that the tip pools were not mandatory and, therefore, not a condition of employment.  The parties resolved their dispute after the Court referred them to mediation with a professional labor mediator, with whom they worked for roughly 12 hours.  The parties appear to have negotiated at arms length and nothing in the record raises red

flags that overcome the presumption of an "absence of fraud or collusion." *See IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006).

*Second*, the litigation is complex, and the expenses and duration already have been substantial, and would grow more if the case proceeded to trial. Had the parties not settled, they would likely engage in collective, and potentially representative, discovery for some time, followed by substantial motion practice. This process would be costly and time-consuming and could create a risk that the plaintiff would recover nothing. The settlement agreement avoids this complexity and expense and provides a relatively prompt resolution of the plaintiff's claims.

*Third*, the parties have engaged in extensive formal discovery throughout the pendency of this litigation to explore the basis of the plaintiff's claims. Aside from initial disclosures under Rule 26, the plaintiff took a Rule 30(b)(6) deposition of Trinity's corporate witness, the plaintiff interviewed several opt-in servers to learn about the defendant's operations and pay practices, and the parties exchanged numerous documents and other data relevant to the defendant's pay practices and the servers' pay records, including all payroll and timekeeping records for the opt-in servers. The parties reviewed the information, discussed it, shared it with their respective clients, and used it to evaluate and confirm the merits of the respective claims and defenses. Finally, the parties articulated that one of the main motivating factors for settling was reducing potential attorney's fees and costs associated with conducting more discovery.

*Fourth*, the parties acknowledge that their respective positions are uncertain due to several factual and legal considerations. The plaintiff argues, but Trinity denies, that the servers are owed unpaid wages due to Trinity's FLSA violations. Trinity contends that the plaintiff has no records or other tangible evidence demonstrating any unpaid wages. Further, the defendant argues that the plaintiff's wage arguments are not supported by law, pointing to the Department of Labor's recent

elimination of the 20% rule.  *See* DOL Opinion Letter FLSA 2018-27 (Nov. 8, 2018).  Trinity also argues that any tip pools were not mandatory and thus not a condition of the plaintiff's employment.  Not only are the parties' positions uncertain, but the range of possible recovery is also open to dispute.  Even if the plaintiff succeeds on the merits of the claim, which would require much more time and resources by both parties, the specific amount recoverable is unknown.

*Fifth*, counsel and the named plaintiff who actively participated in the litigation and the mediation express their strong endorsements of the settlement.

*Sixth*, there are no objectors to the settlement terms.  Many servers already expressed interest in participating in this action by filing a consent form.  Further, because FLSA collective actions employ an "opt-in" mechanism, no one is bound by this proposed settlement except those who affirmatively choose to participate.

*Seventh*, finally, the interest of the public is served when wage-and-hour collective actions successfully redress claims of small value that otherwise would not justify the costs of extended federal litigation.

The named plaintiff spent time with counsel investigating the claims, assisted with drafting and reviewing her complaint, and actively participated in the litigation and settlement process.  The Court is satisfied that the requested incentive payment of $5,000 for the named plaintiff is "not in fact a bounty," *See Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 311 (6th Cir. 2016), but instead reflects just compensation for the time and effort spent on bringing this action to a successful conclusion.

IV.

Plaintiff's counsel has requested, and the defendant does not object to paying $315,000 in attorney's fees and up to $15,000 in settlement administration costs. Plaintiff's counsel agreed to pay any settlement administration costs in excess of $15,000.

The settlement in this case does not create a limited common benefit fund from which attorney's fees will be paid.  Instead, the parties put no upper limit of the defendant's settlement exposure, which is calculated solely by the payment formula. The payments will be made to all opt-in workers without other limitations. Attorney's fees in this case are paid under the fee-shifting provisions of the FLSA.  *See* 29 U.S.C. § 216(b).  That statute mandates an award of attorney's fees, but the amount must be "reasonable."  *Ibid.*  The "starting point" for determining reasonable is "a 'lodestar' calculation." *Moore v. Freeman*, 355 F.3d 558, 565 (6th Cir. 2004)(citing *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000)). "To determine the lodestar figure, the court multiplies the number of hours 'reasonably expended' on the litigation by a reasonable hourly rate." *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016) (quoting *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)). "The court may then, within limits, adjust the lodestar to reflect relevant considerations peculiar to the subject litigation." *Ibid.*

In this case,  the requested fee is less than the full lodestar amount plaintiff's counsel could charge.  The plaintiff's counsel seeks to recover an aggregate amount of $315,000 based on 700 hours billed by its attorneys at various hourly rates. The plaintiff submitted itemized billing records indicating billings by the primary attorneys who worked on the case that are summarized as follows:

- Jesse Young, partner. 11 years experience. $475.00 per hour. 211.7 hours. $100,557.50 in attorney's fees. ECF No. 65-5, PageID.1026.

- 7 -

- Thomas Cedoz, associate. 2 years experience. $275.00 per hour. 40 hours. $11,000.00 in attorney's fees. *Ibid.*

- Amy Wesaw, former associate. $230.00 per hour. 5.9 hours. $1,357.00 in attorney's fees. *Ibid.*

- Peter Weinbrake, member. 26 years experience. $630.00 per hour. 4.3 hours. $2,709.00 in attorney's fees. ECF No. 65-6, PageID.1041.

- R. Andrew Santillo, member. 15 years experience. $420.0 per hour. 200.1 hours. $84,042.00 in attorney's fees. *Ibid.*

- Mark J. Gottesfeld, member. 10 years experience. $325.00 per hour. 1.2 hours. $390 in attorney's fees. *Ibid.*

- Paralegal. $100.00 per hour. 37 hours. $3,700 in attorney's fees. *Ibid.*

- Nicholas Migliaccio, partner. 17 years experience. $718 per hour. 76.25 hours. $54,747.50 in attorney's fees. ECF No.65-7, PageID.1048-49.

- Jason Rathod, partner. 9 years experience. $658 per hour. 69.25 hours. $45,566.5 in attorney's fees. *Ibid.*

- Erick Quezada, associate. 1 year experience. $371 per hour. 42.5 hours. $15,767.50 in attorney's fees. *Ibid.*

- Dominique Reid, former law clerk. $202 per hour. 7.75 hours. $1,565.50 in attorney's fees. *Ibid.*

- Bruno Ortega, paralegal. $202 per hour. 11.25 hours. $2,272.50 in attorney's fees. *Ibid.*

The hourly rates billed by each of the plaintiff's attorneys are reasonable for an employment and FLSA collective action type of practice and their years of experience. The rates charged by all the attorneys range from $371 to $718 per hour, with a blended rate of about $435.17 per hour after considering paralegal rates.  Courts have approved similar blended rates for similar wage and hour settlements. *See Bourne v. Ansara Restaurant Group*, Case No. 16-cv-10332, ECF No. 132, (E.D. Mich., Dec. 12, 2016) (approving a blended rate of $409); *Guallpa v. N.Y. Pro Signs Inc.*, 2014 WL 2200393, *5-7 (S.D.N.Y. May 27, 2014) (approving rate of $600 per hour,

in wage-and-hour case, for attorney who graduated law school in 1995); *Siegel v. Bloomberg L.P.*, 2016 WL 1211849, *5-8 (S.D.N.Y. Mar. 22, 2016) (awarding attorneys' fees in FLSA settlement from $550 to $275 per hour); *Young v. Tri County Sec. Agency, Inc.*, 2014 WL 1806881, *10 (E.D. Pa. May 7, 2014) (approving hourly rate of $600 for a partner in an FLSA settlement); *Butler v. Homeservices Lending LLC*, 2014 WL 5460447, *6-8 (S.D. Cal. Oct. 27, 2014) (approving attorneys' hourly rates of $600, $550, $361.74, and $296.74); *Ingram v. World Security Bureau, Inc., et al.*, 2013 WL 6664782, *2-3 (N.D. Ill. Dec. 17, 2013) (awarding an hourly rates of $425 for the partner and lead attorney and $250 and $225 for the associates in an FLSA settlement).

The level of experience of counsel ranges from paralegals and newly admitted attorneys with 1-2 years of experience to over 26 years of employment litigation experience, and the rates vary proportionally to that experience. Plaintiff's counsel asserts that over 700 hours were devoted to litigating the action. At the blended rate, that translates roughly to $325,000 in fees, which exceeds the amount sought here. Plaintiff's counsel did not furnish the itemized bills documenting how their time was allocated. A more rigorous analysis into the type and quality of work done may be appropriate in other cases, especially common fund cases. However, the defendant did not object to the information provided or the fee sought. Plaintiff's counsel also agreed to cap their fees at a figure below their lodestar value.

Not only is the fee reasonable in light of the lodestar amount, but it is also reasonable compared to other figures awarded in similar cases. Cases previously litigated by the plaintiff's counsel demonstrate that approved fees approaching, or even exceeding, the class recovery is common. *See Shipes v. Amurcon Corp.*, No. 10-14943, ECF No. 139 (E.D. Mich. Oct. 23, 2013) (approving lodestar of $200,000 and FLSA damages of $100,000); *Davis v. TransNav*, No. 13-12590, ECF No. 26 (E.D. Mich. Oct. 29, 2013) (approving lodestar of $60,000 and FLSA damages

of $15,000).  Here, the plaintiff's damages are expected to exceed counsel's requested fee. Although the parties have not suggested a total settlement amount, 72 servers have already opted in, and about 1,700 will have the option to join and seek compensation.  Counsel nonetheless capped their fee request knowing that their lodestar would likely eclipse the amount requested.

Regarding the requested costs, "the FLSA does *not* include the award of attorney fees as costs; rather, 'attorney's fee' and 'the costs of the action' are expressly separate items under § 216(b)." *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994).  Here, plaintiff's counsel incurred total litigation expenses of $7,245.92, consisting of court fees and deposition, travel, and postage costs.  The parties also agreed that the defendants would pay up to $15,000  to administer the settlement, with any remaining costs borne by the plaintiff's counsel.  These costs were necessarily incurred in presenting the claims, and the defendant does not object to the request. The plaintiff's request is reasonable.

V.

For the reasons stated, the Court approves the final settlement of the plaintiff's FLSA action.

Accordingly, it is **ORDERED** that the joint motion for approval of settlement and plan of allocation (ECF No. 65) is **GRANTED**.

It is further **ORDERED** that a service award in the amount of $5,000 is approved for and may be distributed to the named plaintiff, Mercedes Whitfield.

It is further **ORDERED** that plaintiff's counsel's requested fees in the amount of $315,000, including the $7,245.92 incurred as costs, and administrator's fees and costs in an amount not to exceed $15,000 is **APPROVED**.

It is further **ORDERED** that the parties are directed to file a certification when all payments to the opt-in plaintiffs have been disbursed.

It is further **ORDERED** that this action is **DISMISSED WITH PREJUDICE**; provided, however, that this Court retains jurisdiction over all matters relating to the administration of the settlement agreement.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Date:   October 3, 2019

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on October 3, 2019.

s/Susan K. Pinkowski
SUSAN K. PINKOWSKI

---